# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| QIMONDA NORTH AMERICA CORP. | ) | |
| AND QIMONDA, RICHMOND, LLC | ) | |
| | ) | Case No. 09-10589 (MFW) |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| LAKITA BLAIR, LINDA FRAZIER, AND | ) | |
| BONNIE WRIGHT, Individually and as | ) | |
| Class Representatives, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-_____ |
| | ) | |
| QIMONDA NORTH AMERICA CORP. | ) | |
| AND QIMONDA, RICHMOND, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ADVERSARY CLASS ACTION COMPLAINT

Lakita Blair, Linda Frazier, and Bonnie Wright ("Plaintiffs"), individually and as class representatives for all similarly situated[1] former employees of Debtor/Defendants, by and through their undersigned counsel, bring this Complaint and allege as follows:

## NATURE OF ACTION

1. Plaintiffs Lakita Blair, Linda Frazier and Bonnie Wright, and all other similarly situated members of the class they seek to represent, were employees of Debtor/Defendant Qimonda Richmond, LLC and Qimonda North American, Corp. (Qimonda), who were

---

[1] The undersigned counsel has presently been directly retained by approximately 260 former employees of Defendants and have received inquiries from dozens more who we expect to engage undersigned counsel. These names can be provided at the court's request.

terminated without cause as part of, or as a result of, plant shutdowns and/or mass layoffs by and at Defendant's facility in Henrico County, Virginia (the "Virginia Facility"). The Defendants violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act") by failing to give the Plaintiffs and other persons similarly situated, who are members of the Class the Plaintiffs seek to represent, at least 60 days prior notice of termination of their employment as required by the WARN Act. As a consequence, the Plaintiffs, and other members of the class they seek to represent, are entitled to recover from the Defendants, under the WARN Act, their wages and other employee benefits for 60 working days following the termination of their employment, which wages and benefits have not been paid.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1367.

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## PARTIES

5. The Plaintiffs Lakita Blair, Linda Frazier and Bonnie Wright, and other similarly situated members of the proposed class they seek to represent, had been employed by the Defendants, acting as a single employer, until their termination on various dates in early February 2009 or thereafter.

6. The Plaintiffs bring this action on their own behalf and, pursuant to the WARN Act, 29 U.S.C. § 2104(a)(5) and Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of all other persons similarly situated.

7.      The Debtor-Defendants, Qimonda Richmond, LLC, Qimonda North America Corp., (hereinafter "Qimonda" or "Defendants") are, upon information and belief, respectively a Delaware limited liability corporation and a Delaware Corporation that on or about February 20, 2009 (the "Petition Date") filed with the Court voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code").

## FACTUAL ALLEGATIONS

8.      Defendants employed in excess of 1,000 employees at its Virginia facility.

9.      Defendants knew or should have known at least 60 days prior to the February 4 lay-offs that it was likely that Defendants would be required to shutdown or have significant mass lay-offs because of the economic climate and business trends.

10.     Defendants willfully, negligently or recklessly failed to give adequate notice of the potential shutdown/layoffs as required by the WARN Act.

## CLASS ALLEGATIONS

11.     Plaintiffs Blair, Frazier, and Wright, on behalf of themselves and the members of the Class, repeat and re-allege the allegations of the preceding paragraphs as though fully restated herein.

**A.     DEFINITION OF THE CLASS**

12.     Plaintiffs Blair, Frazier, and Wright, and the other similarly situated former employees constitute a class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

13.     The Class is defined as all of those non-bargaining unit employees who were employed by one of the Defendants in facilities with greater than 50 employees, and who became "affected employees" because they suffered "employment losses" as a direct and proximate

-3-
PHIL1 829678-2

result of the plant closing and/or mass layoffs in early February, 2009 or thereafter, and to whom the Defendants failed to provide notice in compliance with the WARN Act.

### B. NUMEROSITY

14. The Class is so numerous as to render joinder of all members impracticable as there are over 1,000 former employees believed to be in the Class. The identities of a majority of the Class members are presently unknown but are ascertainable through appropriate discovery.

### C. EXISTENCE AND PREDOMINANCE OF COMMON ISSUES

15. Common questions of law and fact are applicable to all members of the Class.

16. The common questions of law and fact arise from and concern the following facts and actions:

   a. all Class members enjoyed the protection of the WARN Act;

   b. all Class members were employees of one of the Defendants;

   c. the Defendants, as a single employer, terminated the employment of all the members of the Class;

   d. the Defendants, as a single employer, terminated the employment of the members of the Class without providing at least 60 days' prior written notice as required by the WARN Act; and

   e. the Defendants, as a single employer, failed to pay wages to the Class members and failed to provide other employee benefits for the 60 working day period following the respective terminations of their employment.

17. The questions of law and fact common to the members of the Class, as above noted, predominate over any questions affecting only individual members, and thus, this class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### D.     TYPICALITY

18. Plaintiffs Blair, Frazier, and Wright's claims are typical of the claims of other members of the Class. All such claims arise out of the Defendants' failure to provide notice under the WARN Act and its failure to timely disclose to employees that they would be laid off as a result of the plant closing and/or mass layoffs. Plaintiffs and other Class members have suffered a common injury arising out of the Defendants' common course of conduct as alleged herein.

### E.     ADEQUATE REPRESENTATION

19. Plaintiffs Blair, Frazier, and Wright will fairly and adequately protect and represent the interests of the Class and have no interest antagonistic to or in conflict with those of other Class members.

20. Plaintiffs Blair, Frazier, and Wright have the time and resources to prosecute this action and have retained qualified counsel who have had extensive experience in matters involving employee rights, the WARN Act, and federal court litigation. Plaintiffs Blair, Frazier, and Wright intend to prosecute this action vigorously for the benefit of the class.

### F.     SUPERIORITY

21. A class action is superior to other available methods for a fair and efficient adjudication of this controversy because individual joinder of all members of the Class is impractical. Furthermore, damages suffered by members of the Class may be relatively small when compared to the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Class to obtain relief. The interests of judicial economy favor adjudicating the claims of the Class on a classwide basis rather than an individual basis.

**G.    RISKS OF INCONSISTENT OR VARYING ADJUDICATION**

22.     Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members.  Separate actions by individual members of the Class would create a risk that adjudication of disputed issues of law or fact as to some of the former non-bargaining unit employees would be binding upon other Class members not party to the adjudication, or would otherwise substantially impair or impede their ability to protect their interests.

23.     Pursuant to Fed. R. Civ. P. 23(a), the Class meets all the requirements for class certification.

24.     Class certification is also authorized by the WARN Act, 29 U.S.C. § 2104 (a)(5).

**FIRST CLAIM**

**(Claim of the Named Plaintiffs)**

25.     The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.  Plaintiffs bring this action pursuant to 29 U.S.C. § 2104(a)(5).

26.     At all relevant times, Defendants had more than 100 full-time employees within the United States.

27.     At all relevant times, Defendants employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

28.     At all times relevant, Defendants were "employers" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

29. On or about February 4, 2009 and thereafter, Defendants effected one or more "plant closings" or "mass layoffs," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

30. The complete shutdown of the offices as "facilities or operating units" constitutes a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2), making all persons "affected employees" as a direct and proximate result of the failure to give notice as required under the WARN Act.

31. Alternatively, layoffs resulted in an employment loss of: more than 1/3 of the Defendants' employees, at pertinent "single sites of employment," and as such constituted "mass layoffs" within the meaning of 29 U.S.C. § 2101(a)(3) in that at least 33% of the total employees (excluding any part-time employees) and at least 50 employees (again excluding any part-time employees) experienced an "employment loss" at single sites of employment; or at least 500 employees (company-wide).

32. Plaintiffs Blair, Frazier, and Wright were employees of Defendants.

33. Plaintiffs Blair, Frazier, and Wright were discharged on or about February 4, 2009 without cause on their part as part or as the reasonably foreseeable consequence of a plant closing and/or mass layoffs ordered by Defendants and are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

34. The plant closings and/or mass layoffs resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6), at one or more single sites of employment. The Defendants failed to give written notice of the plant closing and/or mass layoffs to the "affected employees" prior to the actual date of the closings and/or layoffs.

35. The WARN Act required that Defendants give Plaintiffs Blair, Frazier, and Wright at least 60 days prior written notice of termination of employment.

36. Prior to the termination of employment, the named Plaintiffs did not receive written notice from Defendants that complied with the requirements of the WARN Act.

37. Defendants failed to pay Plaintiffs Blair, Frazier, and Wright their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following the respective terminations of their employment.

38. Defendants also failed to make pension and 401(k) contributions as required, and failed to provide health insurance coverage and other employee benefits under ERISA to the Plaintiffs Blair, Frazier, and Wright for 60 calendar days from and after the dates of the respective terminations of their employment.

39. Defendants' failure to provide Plaintiffs Blair, Frazier, and Wright with at least sixty (60) days prior written notice of the termination of employment was a violation of federal law, the WARN Act. The WARN Act specifically provides employers that violate the WARN Act are liable for "back pay" for each day of violation. 11 U.S.C. § 2104(a)(i)(A).

40. Because of Defendants' failure under the WARN Act, Plaintiffs Blair, Frazier, and Wright are entitled to payment for their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for "the period for the violation, up to a maximum of sixty (60) days." 11 U.S.C. § 2104(a)(1).

41. As a result of Defendants' violation of the WARN Act, Plaintiffs Blair, Frazier, and Wright have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension contributions and 401(K) contributions for 60 working days; (b) the health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have received or had the benefit of receiving, for a period of 60

working days after the date of their termination; (c) the medical expenses incurred during such period by them that would have been covered and paid under the Defendants' employee benefit plans had that coverage continued for that period; and (d) interest for the time value of the lost wages and benefits.

42. Pursuant to 11 U.S.C. § 507(a)(4) and (5), the named Plaintiffs are entitled to a priority unsecured claim against MLN as to the first $10,000 of their WARN Act claims, or any higher priority amount as may be allowed. The balance of the named Plaintiffs' WARN Act claims are entitled to treatment as a general unsecured claim.

## SECOND CLAIM

### (Claim of Other Similarly Situated Employees)

43. Plaintiffs Blair, Frazier, and Wright, on behalf of themselves and other non-bargaining unit employees of Defendants who were similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

44. At or about the time that the Plaintiffs Blair, Frazier, and Wright were discharged or shortly thereafter, Defendants also discharged hundreds of other non-bargaining unit employees who are not the named Plaintiffs ("Other Similarly Situated Former Employees") and who worked for one of the Defendants.

45. Pursuant to 29 U.S.C. § 2104(a)(5), the Plaintiffs Blair, Frazier, and Wright assert the claims raised in this proceeding on behalf of each of the Other Similarly Situated Former Employees for them or their benefit.

46. Each of the Other Similarly Situated Former Employees is similarly situated to the named Plaintiffs in respect to their rights under the WARN Act.

47. At all relevant times, Defendants employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

48. At all times relevant, each Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

49. In or about February 4, 2009 and thereafter, Defendants effected one or more "plant closing" or "mass layoffs," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

50. The complete shutdown of the offices as "facilities or operating units" constitutes a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2), making all persons "affected employees" as a direct and proximate result of the failure to give notice as required under the WARN Act.

51. Alternatively, the layoffs by Defendants resulted in an employment loss of more than 1/3 of the Defendants' employees, at pertinent "single sites of employment," and as such constituted a "mass layoff" (or layoffs) within the meaning of 29 U.S.C. § 2101(a)(3) in that at least 33% of the total employees (excluding any part-time employees) and at least 50 employees (again excluding any part-time employees) experienced an "employment loss" at single sites of employment; or at least 500 employees (company-wide).

52. Defendants discharged each of the Other Similarly Situated Former Employees on or after February 4, 2009 without cause on his or her part as part of a plant closing and/or mass layoffs.

53. The plant closings and/or mass layoffs resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6), at one or more single sites of employment. The Defendants failed to give written notice of the plant closings and/or mass layoffs to the "affected

employees" as required by the WARN Act, 29 U.S.C. § 2102, prior to the actual date of the closings and/or mass layoffs.

54. Defendants are required by the WARN Act to give each of the Other Similarly Situated Former Employees at least 60 days prior written notice of the termination of their employment.

55. Prior to the termination of their employment, the Other Similarly Situated Former Employees did not receive written notice from Defendants that complied with the requirements of the WARN Act.

56. Defendants failed to pay the Other Similarly Situated Former Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following the respective terminations of their employment.

57. Defendants also failed to make the pension and 401(k) contributions and to provide health insurance coverage and other employee benefits under ERISA to the Other Similarly Situated Former Employees for 60 days from and after the dates of the respective terminations of their employment.

58. Defendants' failure to provide the Other Similarly Situated Former Employees with at least sixty (60) days prior written notice of the termination of their employment was a violation of federal law, the WARN Act. The WARN Act specifically provides employers that violate the WARN Act are liable for "back pay" for each day of violation. 11 U.S.C. § 2104(a)(i)(A).

59. Because of Defendants' failure under the WARN Act, the Other Similarly Situated Former Employees are entitled to payment for their respective wages, salary,

PHIL1 829678-2

commissions, bonuses, accrued holiday pay and accrued vacation for "the period for the violation, up to a maximum of sixty (60) days." 11 U.S.C. § 2104(a)(1).

60. As a result of Defendants' violation of the WARN Act, the Other Similarly Situated Former Employees, have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension contributions and 401 (k) contributions for 60 working days; (b) the health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have received or had the benefit of receiving, for a period of 60 working days after the dates of the respective terminations of their employment; (c) the medical expenses incurred during such period by such persons that would have been covered and paid under the Defendants' employee benefit plans had that coverage continued for that period; and (d) interest for the time value of the lost wages and benefits.

61. Pursuant to 11 U.S.C. § 507(a)(4) and (5), each Other Similarly Situated Former Employees is entitled to a priority unsecured claim against MLN as to the first $10,000 of his or her WARN Act claim. The balance of each Class member's WARN Act claim is entitled to treatment as a general unsecured claim, or any higher priority amount as may be allowed.

WHEREFORE, Plaintiffs' request the following relief:

A. Damages in favor of Plaintiffs Blair, Frazier, and Wright and each Other Similarly Situated Former Employees, equal to the sum of: (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay and pension and 401(k) contributions for 60 working days; (b) the benefit of health and medical insurance and other fringe benefits under ERISA for 60 working days; (c) any medical or other expenses incurred during the 60 working days since the respective terminations of their employment that would have been covered and

-12-
PHIL1 829678-2

paid under the Defendants' employee benefit plans had that coverage continued for that period; interest for the time value of the lost wages and benefits, all determined in accordance with the WARN Act, 28 U.S.C. § 2104 (a)(1)(A);

B.  Certification that Plaintiffs Blair, Frazier, and Wright and the Other Similarly Situated Former Employees constitute a single class and that the undersigned counsel be appointed as lead Class Counsel;

C.  Interest as allowed by law on the amounts owed under the preceding paragraphs;

D.  Reasonable attorneys' fees and the costs and disbursements incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. 2104 (a)(6); and

E.  Such other and further relief as this Court may deem just and proper.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

Dated: February 20, 2009

 */s/ Michael W. Yurkewicz*
Richard M. Beck, Esquire (ID#3370)
Michael W. Yurkewicz (ID#4165)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189

and

Charles A. Ercole, Esquire
Gianna M. Karapelou, Esquire
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP
260 S. Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060

*Counsel for the
WARN Act claimants*